UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:19-cr-00178 |
| v. | : | |
| | : | Judge Thomas M. Rose |
| JOSHUA FORD, | : | |
| Defendant. | : | |

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 42)**

This case is before the Court on the Motion for Compassionate Release (Doc. No. 42) (the "Motion"), filed by Joshua Ford ("Ford"). Ford is currently incarcerated at Fort Dix FCI [Federal Correctional Institution] in New Jersey. He asks the Court for compassionate release from his term of imprisonment or alternatively for home confinement. More specifically, he asks that this Court grant him compassionate release pursuant to 18 U.S.C. 3582, the First Step Act (FSA) of 2018 (P.L. 115-391), and the CARES ACT. (Doc. No. 46 at PageID 210, 214.) For the reasons discussed below, the Court **DENIES** Ford's Motion.

**I.    BACKGROUND**

On November 27, 2019, the United States of America (the "Government") filed a one count Information in this case, charging Ford with violations of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2). (Doc. No. 23.) Specifically, Ford was charged with knowingly possessing and transporting through interstate and foreign commerce "visual depictions involv[ing] the use of prepubescent minors engaging in sexually explicit conduct. . . ." (*Id.*)

On February 5, 2020, pursuant to a plea agreement, Ford pled guilty to the offense in the

1

Information. (Doc. No. 24.) The Statement of Facts attached to the Plea Agreement, signed by Ford and his attorney, states:

> On or about March 6, 2019, in the Southern District of Ohio, JOSHUA FORD ("FORD") knowingly possessed one or more visual depictions of a minor engaging in sexually explicit conduct (i.e., child pornography, as defined in 18 U.S.C. Section 2256(2)), which had been mailed, shipped, and transported in interstate and foreign commerce, and which had been produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce, by any means including by computer, and the production of such visual depictions involved the use of a minor engaging in sexually explicit conduct.
>
> Beginning on an exact date unknown, but at least in or around September 2018 and continuing up to on or around March 6, 2019, FORD knowingly viewed, possessed, received, and distributed child pornography files on his Black Acer tablet, while residing in the Southern District of Ohio. FORD accessed the Kik Messenger platform (an online smartphone messenger application administered by Kik Interactive, Inc.) utilizing his Black Acer tablet, and an account name of "Joeangie37." FORD traded child pornography files with other users on this platform on several occasions.
>
> In total, FORD possessed at least approximately 290 images of child pornography and 1 video of child pornography on his Black Acer tablet. By way of example, two of the files are described as follows:
>
> > a) An image titled "imgcache.0_embedded_164.jpg" depicted a prepubescent female lying on a blanket wearing only black thigh-high stockings. There appeared to be yellow rope tied around her left ankle and left thigh and yellow rope tied around her right ankle and right thigh exposing her genitals. There also appeared to be yellow rope tied around her wrists, which were pulled above her head.
> >
> > b) An image titled "imgcache.0_embedded_3l0.jpg" depicted a naked prepubescent female, shown from her ears down, sitting on what appears to be a bed, with her legs spread exposing her genitals. There was an adult male, shown from his pelvis down, standing in front of her wearing white underwear, which was pulled down to his thighs, with an erect penis. The prepubescent female had the male's erect penis partially in her mouth.
>
> FORD was the sole individual who viewed, possessed, received, and distributed the child pornography files on the Black Acer tablet. All of the child pornography files were viewed, possessed, received, and distributed while FORD was located in the Southern District of Ohio
>
> The Black Acer tablet was manufactured outside of the state of Ohio. Accessing and utilizing the Kik Messenger platform requires use of the Internet and thereby affects interstate and foreign commerce.

(Doc. No. 24 at PageID 68-69.)

The Final Presentence Investigation Report ("PSI") regarding Ford, provided additional information about the circumstances of the offense and identified a prior conviction for disorderly conduct and six misdemeanor traffic violations. (PSI at ¶¶ 51-52.) The PSI also indicated that Ford had high cholesterol and suffered from nail fungus on his hands and feet. (*Id*. at ¶ 60.) The PSI further indicated that Ford accepted responsibility for his actions. (*Id*. at ¶ 33.)

On August 24, 2020, the Court sentenced Ford to a 60-month term of incarceration, five years of supervised release, $15,000 in restitution, and a $100 special assessment. (Doc. No. 38.) Ford is currently 41 years old and has an anticipated release date of December 11, 2024. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited October 1, 2021)).

On May 11, 2021, Ford filed a Motion for Compassionate Release (Doc. No. 42) and counsel was appointed. (Doc. No. 43.) A Supplemental motion for Compassionate release was filed on June 17, 2021. (Doc. No. 46.) The Government filed its response on August 2, 2021. (Doc. No. 48.) On August 14, 2021, Ford filed his reply. (Doc. No. 49.) The matter is ripe for review and decision.

II. ANALYSIS

A. Legal Standards

A district court has limited authority to modify a sentence. *United States v. Ruffin*, 978 F.3d 1000, 1003 (6th Cir. 2020) ("[s]ince the Sentencing Reform Act of 1984, federal law has generally prohibited a district court from modifying a term of imprisonment once it has been imposed") (alterations adopted) (internal quotation marks omitted). "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence

unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A), colloquially known as the "compassionate release" statute, grants such authority in certain limited circumstances. It provides, in part:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1]

The decision to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A) involves a three-step test, based on three substantive requirements. *United States v. Jones*, 980 F.3d 1098, 1106-08 (6th Cir. 2020); 18 U.S.C. § 3582(c)(1)(A)(i). At step one, a court must find that extraordinary and compelling reasons warrant a sentence reduction.[2] *Jones*, 980 F.3d at 1107-08. At step two, a court must find that such a reduction is consistent with <u>applicable</u> policy statements issued by the Sentencing Commission. *Id.* at 1108. At step three, a court must consider any applicable Section 3553(a) factors and, in its discretion, find that the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case. *Id.* A court may deny a compassionate release motion when any of the three substantive requirements is lacking and need not address the others. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). However, a court cannot grant such a motion unless the court addresses "all three steps" and finds that all three substantive requirements are met. *Id.*

---

[1] Subpart (ii) of this portion of the statute provides "a separate basis for compassionate release tied to the defendant's age and years in prison." *Ruffin*, 978 F.3d at 1003.
[2] "Or, alternatively, whether the defendant fulfills the requirements of § 3582(c)(1)(A)(ii)." *Jones*, 980 F.3d at 1108 n. 12.

Regarding the first step, "Section 3582(c)(1)(A) does not define 'extraordinary and compelling reasons.'" *Ruffin*, 978 F.3d at 1004. Congress instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). But apart from this instruction, "Congress delegated to the Sentencing Commission the responsibility of describing what should be considered extraordinary and compelling reasons for sentencing reduction, including the criteria to be applied and a list of specific examples by promulgating general policy statements regarding the sentencing modification provisions in § 3582(c)(1)(A)." *Jones*, 980 F.3d at 1108-09 (alterations adopted) (internal quotation marks omitted). The Sentencing Commission's policy statement regarding compassionate release under Section 3582(c)(1)(A) resides in § 1B1.13 of the United States Sentencing Commission Guidelines Manual. *Id.* at 1109; U.S.S.G. § 1B1.13 ("Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)"). However, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018." *Jones*, 980 F.3d at 1109. Therefore, and for reasons more fully explained in *Jones*, the Sixth Circuit held that—until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act—district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" in cases where an incarcerated person files a motion for compassionate release.[3] *Id.* at 1109-11.

However, there still are limits on the district court's discretion beyond Congress's single instruction. "Although the statute does not define 'extraordinary and compelling,' those words still have their ordinary meaning at the time Congress enacted the statute." *United States v. Hunter*, No. 21-1275, --- F.4th ---, 2021 U.S. App. LEXIS 26115, 2021 WL 3855665, at *4 (6th Cir. Aug.

---

[3] A district court "may look to § 1B1.13" if it wants to do so "as part of its discretionary inquiry into whether a case presents extraordinary and compelling reasons for release," but "may not proceed as though § 1B1.13 *constrains* its analysis of what constitutes extraordinary and compelling reasons for release." *United States v. Tomes*, 990 F.3d 500, 503 n.1 (6th Cir. 2001) (emphasis in original).

5

30, 2021) (internal quotation marks omitted). "'Extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). "'Compelling' meant 'forcing, impelling, driving.'" *Id.* Additionally, "non-retroactive changes in the law, whether alone or in combination with other personal factors, are not 'extraordinary and compelling reasons' for a sentence reduction." *Id.* And, "facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *Id.* at *4, 9 (at step one, the district court erred by considering the defendant's age when he committed the murder and his co-defendants' sentences in analyzing whether "extraordinary and compelling reasons" existed to warrant a sentence reduction). The first step "focuses on post-sentencing factual developments." *Id.* at *9.

Regarding the second step, again, the Sentencing Commission's policy statement regarding compassionate release under 18 U.S.C. § 3582(c)(1)(A) resides in U.S.S.G. § 1B1.13. *Jones*, 980 F.3d at 1109. However, the Sixth Circuit held in *Jones* that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* Thus, U.S.S.G. § 1B1.13 currently is <u>not</u> an "applicable policy statement[] issued by the Sentencing Commission" in such cases. 18 U.S.C. § 3582(c)(1)(A); *Jones*, 980 F.3d at 1101, 1109. So now, "where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry," at least until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act. *Jones*, 980 F.3d at 1111.

Regarding the third step, "[d]istrict courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. The factors set forth

6

in Section 3553(a) "consider such things as the characteristics of the defendant, the nature of the offense, and various penological goals, such as the need to promote respect for law and to protect the public." *Ruffin*, 978 F.3d at 1005. More specifically, 18 U.S.C. § 3553(a) states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed--
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > >
> > > (B) to afford adequate deterrence to criminal conduct;
> > >
> > > (C) to protect the public from further crimes of the defendant; and
> > >
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence and the sentencing range established for--
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> > >
> > > > (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> > > >
> > > > (ii) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], are in effect on the date the defendant is sentenced; or
> > >
> > > (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy

>statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
>(5) any pertinent policy statement--
>
>>(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>>
>>(B) that, except as provided in section 3742(g) [18 U.S.C. § 3742(g)], is in effect on the date the defendant is sentenced[;]
>
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Among the variety of items that courts have considered in this step are the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, the defendant's background, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, sentencing disparities between defendants (nationally and also among co-defendants) with similar records who are convicted of similar conduct, conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions. *Jones*, 980 F.3d at 1115; *Ruffin*, 978 F.3d at 1008-09; *Hunter*,

2021 WL at *9 (in balancing the § 3553(a) factors, a district court is permitted, but not required, to consider non-retroactive changes in the law). Of course, not all of these items will be applicable or relevant (or known to the court) in all cases, and other items may be applicable or relevant. *Id.*; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable").

Finally, "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *Jones*, 980 F.3d at 1106; *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Ruffin*, 978 F.3d at 1005 (a "district court has substantial discretion" in deciding whether to reduce a term of imprisonment pursuant to Section 3582(c)(1)(A)); *Elias*, 984 F.3d at 518 (a district court may reduce the term of imprisonment if all three of the substantive requirements are met, "but need not do so").

### B. Application

Ford asks the Court grant him compassionate release and specifically requests, "an order reducing Defendant's sentence to time served; or in the alternative, modifying his judgment as the court deems appropriate, including but not limited to allowing the remainder of his sentence to be served on home confinement." (Doc. No. 46 at PageID 210.) Ford states that his medical conditions include obesity, early-stage COPD, hyperlipidemia, a history of smoking, and depression including a history of suicidal ideation. (*Id*. at PageID 211.) Ford also argues that he has limited opportunities to attend programming, including sex offender treatment. (*Id*. at PageID 212.) Additionally, Ford argues that, "[t]he COVID-19 outbreak at FCI Fort Dix has been severe and led to dire conditions and extreme hazard for incarcerated inmates." (*Id*. at PageID 211.)

In response, the Government argues that the Bureau of Prisons ("BOP") has taken a number of precautions to minimize the risk of COVID-19 transmissions, including providing vaccinations

to staff and inmates. (Doc. No. 48 at PageID 235-36.) The Government further argues that this Court lacks the authority to grant Ford's request for home confinement and that Ford has not demonstrated that he is eligible for release under § 3582(c)(1)(A). (Doc. No. 48 at PageID 237-43.)

In Reply, Ford argues that BOP's efforts to mitigate the risk of COVID-19 transmission do not do enough and the only effective mitigation for a high-risk individual, such as Ford, would be removal from incarceration. (Doc. No. 49 at PageID 249-50.) Ford further argues that his health conditions state a sufficiently extraordinary and compelling reason to justify his compassionate release. (*Id*. at PageID 251.) Finally, Ford argues that he is not a danger to the community. (*Id*. at PageID 252-54.)[4]

1. Preliminary matters

The Court must first address Ford's request that the Court allow him to complete the rest of his sentence under house arrest, which amounts to asking the Court to change the place where his sentence will be served (from Fort Dix FCI to his home), without reducing the term of his sentence. However, it is the BOP, not the courts, that has the authority to determine the place of a defendant's confinement. The CARES Act did not change this fact. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment …"); CARES Act, Pub. L. No. 116-136, at Div. B., Title II, § 120003(b)(2); *United States v. Brummett*, No. 20-5626, 2020 U.S. App. LEXIS 26427, at *5, 2020 WL 5525871 (6th Cir. Aug. 19, 2020) ("to the extent that [the defendant prisoner] sought relief under the CARES Act, the district court correctly held that the authority to grant home confinement remains solely with the Attorney General and the BOP");

---

[4] Ford also requests an evidentiary hearing regarding this Motion. (Doc. No. 46 at PageID 228, Doc. No. 49 at PageID 253.) The apparent reason for such a hearing would be to demonstrate that Ford is not a danger to society. (Doc. No. 49 at PageID 253.) The Court's determination is based on a multitude of factors, beyond just the threat posed to society. Therefore, a hearing is unnecessary to decide this Motion. The request for a hearing is denied.

10

*see also United States v Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020) ("Section 3582(c)(1)(A) does not authorize the district court to order that a defendant serve his current sentence in home confinement," but, if the court "reduces a defendant's sentence under § 3582(c)(1)(A) to time served, [then] it can impose a term of supervised release equal to the unserved time and order, as a condition of that supervised release, that the defendant be confined to his home"). Therefore, the request is denied.

2. Compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)

The Court now turns to Ford's request for compassionate release through reducing his term of imprisonment pursuant to Section 3582(c)(1)(A)(i). (*See* Doc. No. 46 at PageID 218-28.) Regarding step one, for the purposes of the Court's analysis, the Court will assume—without deciding—that Ford has demonstrated that suffering from his stated medical ailments during the current COVID-19 pandemic presents an extraordinary and compelling reason for reducing the term of imprisonment.[5] Regarding step two, given that Ford (an incarcerated person) filed the Motion, the Court "may skip"—and does skip—this step, in accordance with the Sixth Circuit's *Jones* decision. *Jones*, 980 F.3d at 1111.

However, that does not end the Court's inquiry. There is still the third step: consideration of any applicable Section 3553(a) factors and determination of whether, in the Court's discretion, the reduction is warranted in whole or in part under the particular circumstances of this case. *Elias*, 984 F.3d at 519; *Jones*, 980 F.3d at 1108; 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ruffin*, 978 F.3d

---

[5] The Court emphasizes it has not actually found that any circumstance (separately or combined) alleged by Ford qualifies as an "extraordinary and compelling reason[] [that] warrant[s] a reduction" of his sentence. 18 U.S.C § 3582(c)(1)(A)(i). As shown herein, the Court need not actually conduct that analysis to decide the Motion. *See, e.g., Jones*, 980 F.3d at 1108 (affirming district court's decision, which had "assumed for the sake of argument that extraordinary and compelling reasons existed" to reduce the defendant's term of imprisonment, proceeded to weigh several § 3553(a) factors, and then denied the motion for compassionate release).

11

at 1005 ("[e]ven if [the first two requirements] are met, … a district court may still deny relief if it finds that the applicable § 3553(a) factors do not justify it") (internal quotation marks omitted).

The Court has considered the Section 3553(a) factors to the extent that they are applicable. 18 U.S.C. § 3582(c)(1)(A)(i). This includes that the Court considered Ford's history and characteristics, such as his asserted behavior in prison and rehabilitation efforts. *See* 18 U.S.C. § 3553(a)(1). Ford also accepted responsibility for his actions. The Court acknowledges the challenging conditions at Fort Dix FCI during the current COVID-19 pandemic and Ford's stated health issues. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(D).

Yet, the "nature and circumstances of the offense" do not favor early release. *See* 18 U.S.C. § 3553(a)(1). The offense for which Ford is currently incarcerated involved the possession and distribution of child pornography. (Doc. No. 24 at PageID 61.) Specifically, Ford possessed an image depicting a prepubescent female with a yellow rope tied around her limbs and neck with her genitals exposed. (Doc. No. 24 at PageID 68.) He also possessed an image depicting a naked prepubescent female, with her legs spread exposing her genitals and an adult male's erect penis partially in her mouth. (*Id*.) Agents recovered 290 images and 1 video from Ford's computer. (PSI at ¶ 26.)

Numerous courts have been disinclined to grant compassionate release to petitioners convicted of crimes involving child pornography due to the potential danger they pose. *Coleman v. United States*, 456 F. Supp. 3d 543, 549 (E.D. Va. 2020); *United States v. Leafsedt*, 3:15-CR-47, 2020 U.S. Dist. LEXIS 147703, *8-9, 2020 WL 4760136 (D. Alaska August 17, 2020); *United States v. Louk*, 1:19-CR-111, 2021 U.S. Dist. LEXIS 1901, at *4, 2021 WL 50858 (N.D. Ohio January 6, 2021). As the victim impact statement demonstrates (*See* Doc. 48 at PageID 241), the viewing of these videos has a traumatic impact on the adolescents in these videos.

Additionally, Ford has served less than half of his sentence and still has a substantial amount of his sentence remaining. *See* 18 U.S.C. § 3553(a)(2)(A), (a)(2)(B), (a)(6); *Ruffin*, 978 F.3d at 1008 (considering the amount of the sentence that the petitioner had served); *United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("the need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate"). Releasing Ford with so much time remaining on his sentence "would not reflect the seriousness of his conduct." *United States v. Lamber*, 2021 U.S. App. LEXIS 9458, at *4-5, 2021 WL 2104503 (6th Cir. 2021) (affirming the district court's denial of compassionate release for an inmate who plead guilty to child-pornography offenses where he had served less than twenty-five percent of his sentence). The Court finds that the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant do not favor early release. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

Having considered the factors set forth in Section 3553(a) to the extent that they are applicable, the Court finds that the requested reduction in the term of imprisonment is not warranted. Thus, even if steps one and two authorized the requested reduction, the Court finds that consideration of the applicable Section 3553(a) factors calls for denial of the Motion. *Jones*, 980 F.3d at 1102 (affirming decision to deny motion for compassionate release where "the district court found for the sake of argument that an extraordinary and compelling circumstance existed in [defendant's] case but that the § 3553(a) factors counseled against granting compassionate release"); *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020) (affirming denial of a compassionate release motion where "the District Court reasonably concluded that several of the

§ 3553(a) factors—including … the need to reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence—counsel against compassionate release …").

### III. CONCLUSION

Although the Court recognizes Ford's asserted medical ailments and is sympathetic to his arguments about the fear of contracting COVID-19, the circumstances here do not warrant a reduction in the term of imprisonment pursuant to Section 3582(c)(1)(A).  For the reasons stated above, the Court **DENIES** the Motion for Compassionate Release (Doc. No. 42).

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, October 5, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE